[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11553
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 13, 2010
JOHN LEY
CLERK

Agency No. A095-544-867


MARIA ISABEL MENDOZA-RODRIGUEZ,
GUSTAVO ADOLFO GARCIA-ACOSTA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 13, 2010)

Before DUBINA, Chief Judge, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Maria Mendoza-Rodriguez and her husband ("Petitioners") seek review of

the BIA's decision denying their application for asylum or withholding of removal, and its summary decision affirming the IJ's subsequent order denying them CAT relief. Petitioners argue that the BIA erroneously held that they did not belong to a protected class for asylum purposes, and also failed to provide a reviewable discussion for that holding. Petitioners further argue that the BIA and IJ applied an incorrect standard to their application for CAT relief. Petitioners cite to *Silva-Rengifo v. Att'y Gen. of U.S.*, 473 F.3d 58 (3rd Cir. 2007), for the proposition that they only had to establish that the Colombian government was willfully blind to torturous activity. Petitioners maintain that the Colombian government has been willfully blind about the torture that they face if they are forced to return to Colombia.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's opinion. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). We review the BIA's conclusions of law *de novo*, but review findings of fact for substantial evidence to support them. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). "Our review for substantial evidence is highly deferential", and we "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id*. at 1351 (internal quotation

2

marks omitted).  We will only reverse the agency's decision if evidence would "compel[ ] a reasonable fact finder to find otherwise." *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1290 (11th Cir. 2006) (per curiam) (internal quotation marks omitted).  The fact that evidence in the record may also support a conclusion contrary to the administrative findings is not enough to justify a reversal.  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*).

A.    *Reasoned Explanation*

Petitioners argue that the BIA did not provide a reasoned explanation for its decision sustaining the government's appeal.  In its decision, the BIA stated that "[w]e agree with the [government] that the respondents are not eligible for asylum and withholding of removal because they failed to establish their mistreatment was on account of a protected ground under the Act."

In its appeal, the government identified two protected grounds that it claimed did not apply to Petitioners.  First, the government argued that Petitioners did not suffer any mistreatment on account of their political opinions.  Second, the government argued that Petitioners did not suffer mistreatment on account of their membership in a particular social group.  We conclude from the record that Petitioners submitted insufficient evidence to demonstrate that they experienced past persecution or fear of future persecution "on account of" a protected ground.

The record evidence indicates that the paramilitary organization's motivation in threatening Petitioners was attributable to its desire to keep information about the organization secret and their desire to obtain certain property from the Mendoza family. Ms. Mendoza testified that she believed the paramilitary group through her brother had revealed information to her and her family regarding the paramilitary group. A.R. 356. When armed members of the paramilitary group went to Ms. Mendoza's house and threatened her, the group's stated concern was that Ms. Mendoza or another family member would say or do something that would endanger the group. A.R. 357. When one of the heads of the paramilitary group told Ms. Mendoza's mother over the telephone that they would be murdered, he stated it was because he believed Ms. Mendoza's brother shared information about the paramilitary group with his family. A.R. 358. After Ms. Mendoza's brother gave two envelopes containing titles to real property and bank accounts to their mother, the paramilitary organization demanded that one of the envelopes be handed over to them. A.R. 361. Nothing in Ms. Mendoza's testimony or the record evidence indicates that the paramilitary group attributed any sort of political opinion to Petitioners or that they had any motivation other than to silence Ms. Mendoza's family and to obtain property. "[E]vidence that either is consistent with acts of private violence or the petitioner's failure to

4

cooperate with guerrillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." *See Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006); *see also I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 482, 112 S. Ct. 812, 816 (1992) ("the mere existence of a generalized 'political' motive" does not establish persecution on account of a protected ground); *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 438 (11th Cir. 2004) ("It is not enough to show that she was or will be persecuted or tortured due to her refusal to cooperate with the guerillas."); *Molina-Morales v. I.N.S.*, 237 F.3d 1048, 1051-52 (9th Cir. 2001) (holding that persecution because of personal vendetta for reporting local official to police is not persecution on account of imputed political opinion).

Further, contrary to Petitioners' claims, Petitioners' Brief at 18-19, there is no evidence that the paramilitary group believed Petitioners belonged to, nor do Petitioners actually belong to, any group that qualifies as a "particular social group" within the meaning of the INA. A group may qualify as a "particular social group" under the INA if the group has both immutability and social visibility. *See Castillo-Arias v. U.S. Att'y General*, 446 F.3d 1190, 1196 (11th Cir. 2006). In *Castillo-Arias*, this court held that the Board's legal definition of what constitutes a particular social group was reasonable and "neither arbitrary,

capricious, nor clearly contrary to law." *Id.* at 1196. As for immutability, a "particular social group" must have a "common, immutable characteristic . . . [that] is fundamental to [its members'] individual identities or consciences." *Id.* (*citing Matter of Acosta*, 19 I. & N. Dec. 211, 233-34 (BIA 1985), overruled on other grounds by *Matter of Mogharrabi*, 19 I. & N. Dec. 439, 447 (BIA 1987)). Examples of a common, immutable characteristic include sex, color, kinship ties, or in certain circumstances "a shared past experience such as former military leadership or land ownership." *Id.* at 1193 (internal quotation marks omitted). The common characteristic must be something other than the risk of being persecuted. *See id.* at 1198.

As for social visibility, the fact that "a characteristic or association is shared by a large number of people does not mean that either society at large, let alone other members within that same group, will recognize that characteristic or association." *Id.* In *Castillo-Arias*, this court concluded that non-criminal informants working against a Colombian drug cartel were not a particular social group under the INA because they were not socially visible, the group was too numerous and inchoate, and their defining attribute was their persecution by their cartel once their identities were revealed. *Id.* at 1197-98. The court emphasized that a "particular social group" should not be the "'catch all' for all persons

6

alleging persecution who do not fit elsewhere." *Id.* at 1198 (internal citations omitted).

Petitioners claim they belong to a "protected class" based upon Ms. Mendoza's brother's (Diego Herman Mendoza - "Diego") membership in a particular social group – paramilitaries. Pets' Br. at 18. Thus, they claim to be a part of an "imputed" social group. Yet, they provide no explanation as to how Diego's membership in the paramilitary organization – which hardly constitutes an immutable characteristic – creates a particular social group of which they are members. Nor do they explain how Diego's membership in the paramilitary organization made whatever group they belong to socially visible. Regardless, there is no evidence membership in any social group was the motivation for the paramilitary group's threats.

Petitioners further claim that the Board did not provide a reasoned decision when it denied their application for asylum and withholding of removal. Pets' Br. at 18. The Board, however, stated that it agreed with the government that Petitioners failed to establish that their mistreatment was on account of a protected ground. A.R. 252. In its appellate brief to the Board, the government set forth numerous arguments as to why Petitioners failed to meet their burden, all of which are contained in the record. A.R. 265-91. It is for the reasons set forth in that

7

brief and in *Elias-Zacharias*, *infra*, that the Board granted the government's appeal. This reasoning is sufficient for this court's meaningful review. *See Mendoza v. U.S. Att'y. Gen.*, 327 F.3d 1283, 1289 (11th Cir. 2003) (holding Board's summary affirmance procedures did not violate due process because "an appellate court will continue to have the IJ's decision and the record upon which it is based available for review.") (internal citations and quotations omitted)).

B.    *CAT Relief*

To qualify for CAT relief, the applicant carries the burden of proof to "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1239 (11th Cir. 2007) (quoting 8 C.F.R. § 208.16(c)(2)). Torture is the intentional infliction of "severe pain or suffering, whether physical or mental." *See* 8 C.F.R. § 208.18(a)(1). Moreover, to obtain CAT relief, the alien must demonstrate that the torture would be inflicted by the government or with the government's consent or acquiescence. *See Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 208.18(a)(7). Evidence relevant to

8

the assessment of eligibility for CAT relief includes, but is not limited to: (1) evidence of past torture inflicted on the applicant; (2) the viability of relocation as a means to avoid torture; (3) gross, flagrant or mass human rights violations in the country of removal; and (4) other relevant country conditions. *See* 8 C.F.R. § 208.16(c)(3). The burden of proof for an applicant seeking withholding of removal under the CAT, like that for an applicant seeking withholding of removal under the INA, is higher than the burden imposed on an asylum applicant. *Al Najjar*, 257 F.3d at 1303. We have held that a claimant for withholding of removal cannot confer derivative rights on a family member. *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 862 (11th Cir. 2007).

As an initial matter, the record does not indicate that the IJ or BIA applied an incorrect legal standard in their considerations of Mendoza-Rodriguez's CAT relief application. First, Mendoza-Rodriguez cited to a Third Circuit decision in support of her argument that the BIA and IJ applied an improper "acquiescence" standard instead of a willful blindness standard. Second, both the IJ and the BIA applied the proper standard, determining that Mendoza-Rodriguez had failed to establish that she more likely than not would be tortured by or with the Colombian government's acquiescence upon her return to Colombia. In fact, the BIA noted that the question of acquiescence included the concept of willful blindness.

9

Therefore, both the IJ and BIA properly analyzed Mendoza-Rodriguez's CAT relief application under our precedent. *See Reyes-Sanchez*, 369 F.3d at 1242.

Next, the record demonstrates that there was substantial evidence to support the IJ's and BIA's denial of Mendoza-Rodriguez's application for CAT relief. Mendoza-Rodriguez's documentary evidence, in particular the United States State Department's 2008 Country Report on Human Rights Practices in Colombia, indicates that the Colombian government, rather than acquiescing to the para-military forces, had been struggling to bring them to justice or at least lessen their influence. Diego's arrest itself suggests that the Colombian government, in some sense, is not acquiescing to the illegal activities of the para-military groups.

In any event, Mendoza-Rodriguez has simply made no showing that she more likely than not will be subjected to any form of torture upon her return to Colombia. As the IJ pointed out, Mendoza-Rodriguez never claimed that she or any of her family members had ever been physically harmed by the para-military group that allegedly killed her brother. Mendoza-Rodriguez made no showing that Diego's para-military group, the "Self Defense Group of Bogota," was so pervasive throughout Colombia that her family could not relocate somewhere other than Bogota. Further, Mendoza-Rodriguez admitted that her mother had moved back to Colombia, and had been living there for six months without

10

incident. Mendoza-Rodriguez did not establish that she was likely to be tortured by Diego's para-military group upon her return to Colombia, and we deny her petition for review in this respect.

For the above-stated reasons, we deny Petitioners' petition for review.

**PETITION DENIED.**